IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW WHITFIELD, : | |
| : | Case No. _____ |
| Plaintiff, : | |
| : | JURY TRIAL DEMANDED |
| v. : | |
| : | **COMPLAINT FOR VIOLATION OF THE** |
| SELECT INTERIOR CONCEPTS, INC., : | **SECURITIES EXCHANGE ACT OF 1934** |
| DONALD MCALEENAN, ROBERT SCOTT : | |
| VANSANT, S. TRACY COSTER, BRYANT : | |
| RILEY, and BRETT WYARD, : | |
| : | |
| Defendants. : | |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On August 8, 2021, Select Interior Concepts, Inc. ("Select" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Astro Stone Intermediate Holding, LLC ("Parent") and Astro Stone Merger Sub Inc.. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Select's stockholders will receive $14.50 in cash per share.

3. On September 15, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Select common stock.

9. Defendant Select is a Delaware corporation. Select's common stock is traded on the NASDAQ under the ticker symbol "SIC."

10. Defendant Brett Wyard is Chairman of the Board of Directors of Select (the "Board").

11. Defendant Donald McAleenan is a member of the Board.

12. Defendant Robert Scott Vasant is a member of the Board.

13. Defendant S. Tracy Coster is a member of the Board.

14. Defendant Bryant Riley is a member of the Board.

15. Defendants identified in ¶¶ 10-14 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

16. Select is a distributor of interior building products with leading market positions in highly attractive markets.

17. On August 8, 2021, Select entered into the Merger Agreement.

18. The press release announcing the Proposed Merger provides as follows:

Select Interior Concepts, Inc. (NASDAQ: SIC), a premier distributor of interior building products, today announced that it has entered into a definitive agreement under which an affiliate of Sun Capital Partners, Inc. ("Sun Capital") will acquire Select Interior Concepts ("SIC") for approximately $411 million in an all-cash transaction (the "Merger Transaction").

Under the terms of the agreement, each share of SIC common stock issued and outstanding immediately prior to the closing of the transaction will be entitled to receive $14.50 per share in cash, representing a 32% premium over SIC's closing price and a 42% premium over SIC's 30-day volume-weighted average price of $10.20 on August 6, 2021. Subject to shareholder approval and other customary closing conditions, including the receipt of required regulatory approvals, the transaction is expected to close early in the fourth quarter of 2021. Upon the completion of the transaction, SIC will become a privately held company and shares of SIC common stock will no longer be listed on any public markets.

Brett G. Wyard, Chairman of SIC, commented, "On June 30, 2021, when we announced the closing of the sale of our Residential Design Services segment, we noted that the Board was actively evaluating a full range of strategic, operational and financial alternatives to ensure that the Company was on the best path to delivering shareholder value. After thorough and thoughtful deliberations in consultation with our financial advisors, we are pleased to enter into a definitive sale agreement with an affiliate of Sun Capital. In making this decision, the Board considered the current state of the business and its outlook and opportunities. We believe this path is in the best interests of our shareholders, providing them with immediate and substantial value for their investment."

Bill Varner, Chief Executive Officer added, "This transaction will deliver significant cash value for SIC's shareholders as promised when I joined SIC. Additionally, it offers exciting new opportunities for customers, partners and employees of our Architectural Surfaces Group ('ASG') segment. We are very grateful to the entire team that contributed to SIC's and ASG's success over the years. Sun Capital is the ideal partner to advance its long-term strategy and the transaction is a testament to the dedication and achievements of our team members."

"We have long been an active investor in the building materials sector, and have been impressed by SIC's track record, ability to deliver for customers and overall industry vision," said Jeremy Stone, Managing Director at Sun Capital. "We are excited to support SIC's strong management team in the next stage of growth, capitalize on new opportunities and drive success."

In light of the pending sale of SIC, the second quarter 2021 earnings conference call previously scheduled for 5:00 PM ET on August 9, 2021 has been cancelled. The Company will release its financial results for the second quarter of 2021 later today.

**Advisors**

RBC Capital Markets, LLC and Truist Securities, Inc. served as financial advisors and Alston & Bird LLP served as legal advisor to SIC.

Raymond James & Associates, Inc. served as financial advisor and both Kirkland & Ellis LLP and Klehr Harrison Harvey Branzburg LLP served as legal advisors to Sun Capital.

19. On September 15, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

20. The Proxy fails to disclose material information regarding Select's financial projections. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

21. The Proxy fails to disclose: (i) the line items used to calculate adjusted EBITDA; and (ii) projected free cash flows and the line items used to calculate free cash flows.

Financial Analyses

22. The Proxy fails to disclose material information regarding the financial analyses conducted by RBC Capital Markets, LLC ("RBC") and Truist Securities, Inc. ("Truist"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation

4

methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

23. Regarding RBC's Selected Public Companies Analyses, the Proxy fails to disclose the individual multiples for the companies.

24. Regarding RBC's Selected Precedent Transactions Analysis, the Proxy fails to disclose the individual multiples for the transactions.

25. Regarding RBC's Discounted Cash Flow Analyses, the Proxy fails to disclose: (i) projected unlevered free cash flows and the underlying line items; and (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates.

26. Regarding RBC's price targets analysis, the Proxy fails to disclose: (i) the price targets observed; and (ii) the sources of the price targets.

27. Regarding Truist's Selected Public Companies Analysis, the Proxy fails to disclose the individual multiples for the companies.

28. Regarding Truist's Selected Precedent Transactions Analysis, the Proxy fails to disclose the individual multiples for the companies.

29. Regarding Truist's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) projected unlevered free cash flows and the underlying line items; and (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates.

## Background of the Proposed Merger

30. The Proxy fails to disclose whether Select entered into any confidentiality agreements that contained don't ask, don't waive provisions.

31. The Proxy fails to disclose the timing and details of the prior services Truist provided to Parent and its affiliates, and the fees received by Truist in connection with the services.

## COUNT I

**Claim Against the Individual Defendants and Select for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

32. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

34. Select is liable as the issuer of these statements.

35. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

36. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

38. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

39. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

40. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

41. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

42. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Select within the meaning of Section 20(a) of the Exchange Act as alleged herein.

44. Due to their positions as officers and/or directors of Select and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

46. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

47. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

48. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

50. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

51. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  October 1, 2021 **GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*